IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 22-cv-02802-CNS-STV

XCEL ENERGY SERVICES, INC. and
SOUTHWESTERN PUBLIC SERVICE COMPANY,

    Plaintiffs,

v.

NATIONAL AMERICAN INSURANCE COMPANY,

    Defendant.

## ORDER

Before the Court is Defendant National American Insurance Company's Amended Choice of Law Brief (ECF No. 43), and Defendant's Motion for the Court to Reconsider Order Denyig [sic] Motion to Transfer Case (ECF No. 48). Filed in response to the Court's February 15, 2023, Order, Defendant's choice of law brief contends that Oklahoma substantive law should apply to all of Plaintiffs' claims (*see generally* ECF No. 43). For the reasons set forth below, the Court disagrees. The Court additionally DENIES Defendant's reconsideration motion.

### I. BACKGROUND

The parties are familiar with the case's background. In November 2022, Defendant filed its Motion to Dismiss Plaintiffs' Third Claim for Relief (ECF No. 13). The Court denied Defendant's dismissal motion without prejudice, ordering full briefing on the choice of law

1

regarding Plaintiffs' claims (ECF No. 38). The matter is fully briefed (ECF Nos. 43, 46, and 47). In May 2022, Defendant filed its reconsideration motion (ECF No. 48).

## II. DISCUSSION

### A. Choice of Law Brief

Having considered the parties' briefs and relevant legal authority, the Court disagrees with Defendant that Oklahoma substantive law applies to Plaintiffs' claims.

#### 1. Legal Standard

When exercising diversity jurisdiction, a court applies the choice of law rules of the state in which it sits. *See, e.g, Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Choice of law determinations are made on a "claim-by-claim" basis. *Flaherty v. Banner Life Ins. Co.*, No. 20-cv-00581-REB-GPG, 2022 WL 1198909, at *1 (D. Colo. Feb. 7, 2022). Courts do not make choice of law decisions unless an "outcome-determinative conflict" exists between two bodies of law that may apply to a claim. *United Int'l Holdings, Inc. v. Wharf (Holdings) Ltd.*, 946 F. Supp. 861, 866 (D. Colo. 1996) (citation omitted). When no outcome-determinative conflict exists, a court applies the forum state's law. *SELCO Cmty. Credit Union v. Noodles & Co.*, 267 F. Supp. 3d 1288, 1292 (D. Colo. 2017). Thus, unless there is an outcome-determinative conflict between Colorado law and Oklahoma law, Colorado law will apply to Plaintiffs' claims in this action.

#### 2. Analysis

***Plaintiffs' Breach of Contract Claim and Statutory Claim.*** Defendant contends that Oklahoma substantive law applies to Plaintiffs' breach of contract claim because there is an outcome-determinative conflict between Colorado and Oklahoma law (ECF No. 43 at 7). Plaintiffs contend that there is no outcome-determinative difference between the "contractual interpretation

2

laws" of Colorado and Oklahoma, and therefore Colorado substantive law applies to Plaintiffs' breach of contract claim (ECF No. 46 at 3). The Court agrees with Plaintiffs.

The frameworks regarding contract interpretation under Colorado law and Oklahoma law, and for breach of contract claims under these bodies of law, are substantially the same. *Compare Abady v. Certain Underwriters at Lloyd's London Subscribing to Mortg. Bankers Bond-No. MBB-06-0009*, 317 P.3d 1248, 1251–52 (Colo. App. 2012) *and Cotter Corp. v. Am. Empire Surplus Lines Ins. Co.*, 90 P.3d 814, 819–20 (Colo. 2004), *as modified on denial of reh'g* (June 7, 2004), *with Andres v. Oklahoma Farm Bureau Mut. Ins. Co.*, 227 P.3d 1102, 1105 (Okla. Civ. App. 2009), *and Porter v. Oklahoma Farm Bureau Mut. Ins. Co.*, 330 P.3d 511, 515 (Okla. 2014). After reviewing the substantive law of Colorado and Oklahoma regarding contract interpretation and breach of contract claims, Defendant fails to persuade that there is an outcome-determinative conflict between these bodies of law (*see, e.g.,* ECF No. 43 at 7). *See also Daniluk v. Norfolk S. Ry. Co.*, No. 13-cv-01304-CMA-CBS, 2015 WL 148560, at *3 (D. Colo. Jan. 12, 2015) (finding no outcome-determinative conflict of law where required elements of claims under Colorado and Pennsylvania were "substantially the same"); *Okland Constr. Co., Inc. v. Phoenix Ins. Co.*, No. 11-cv-02652-LTB-BNB, 2014 WL 884690, at *3 (D. Colo. Mar. 6, 2014) (finding no conflict that required a choice-of-law analysis where "the same principles" under Colorado and Utah law applied "in determining whether there was coverage" under applicable liability policies). Accordingly, Colorado substantive law applies to Plaintiffs' breach of contract claim. *See SELCO Cmty. Credit Union*, 267 F. Supp. 3d at 1292.[1]

---

[1] To the extent that Defendant argues any outcome-determinative conflict regarding Plaintiffs' statutory claim affects the Court's choice-of-law analysis of Plaintiffs' breach of contract claim, the Court rejects Defendant's argument (*see* ECF No. 43 at 8). *See also Sun Well Serv., Inc v. Berkley Nat'l Ins. Co.*, No. 1:21-cv-02122-SKC, 2022 WL 18399478, at *3 (D. Colo. Jan. 12, 2022).

3

Defendant also argues that "the determination of which state's laws apply controls whether Colorado's or Oklahoma's regulatory statutes" apply, underscoring what it contends is an outcome-determinative conflict between the laws of Colorado and Oklahoma (ECF No. 43 at 8). Put differently, Defendant contends that the Court's choice of law determination regarding the contract claim "will determine whether §§ 10–3–1115 and 10–3–1116 could apply to this action" (ECF No. 47 at 4). Plaintiffs do not dispute that an outcome-determinative difference exists between Colorado and Oklahoma's statutory insurance schemes (*see* ECF No. 46 at 6). However, Plaintiffs contend that these differences have no bearing on the Court's choice of law determination regarding "the question of contract interpretation," and that because there is no outcome-determinative conflict between Colorado and Oklahoma law regarding their breach of contract claim and contract interpretation that any differences in the states' regulatory regimes do not affect the Court's choice of law analysis (*id.*). The Court agrees with Plaintiffs.

Several courts have concluded that "[o]nce it has been determined that the law of a particular state governs the interpretation of an insurance contract, any statutory insurance claims that implicate performance of the contract must also be raised under the law of the controlling state." *Werden v. Allstate Ins. Co.*, 667 F. Supp. 2d 1238, 1245 (D. Colo. 2009) (citing *Rush v. Travelers Indem. Co.*, 891 F.2d 267, 270 (10th Cir. 1989)); *see also Duong v. State Farm Mut. Auto. Ins. Co.*, No. 21-cv-02187-NYW-NRN, 2022 WL 4386003, at *5 (D. Colo. Sept. 22, 2022). Accordingly, the Court rejects Defendant's argument that any conflicts in the statutory regimes of Colorado and Oklahoma create an outcome-determinative conflict that disturbs the Court's application of Colorado law to Plaintiffs' contract and statutory claims. *See SELCO Cmty. Credit Union*, 267 F. Supp. 3d at 1292; *Werden*, 667 F. Supp. 2d at 1245. Because Colorado law controls

4

Plaintiffs' breach of contract claim, it also controls Plaintiffs' statutory bad faith claim. *See NBH Cap. Fin. v. Scottsdale Indem. Co*., No. 1:19-cv-02153-RMR-MEH, 2022 WL 3597118, at *6 (D. Colo. Mar. 30, 2022).[2]

Therefore, for the reasons set forth above, Colorado law applies to Plaintiffs' first claim for breach of contract and third claim for statutory bad faith, and the Court need not engage in any further choice of law analysis regarding these claims. *See, e.g., Duong*, 2022 WL 4386003, at *5 ("Once it has been determined that the law of a particular state governs the interpretation of an insurance contract, any statutory insurance claims that implicate performance of the contract must also be raised under the law of the controlling state." (quotations and alteration omitted)); *United International Holdings*, 946 F. Supp. at 866.

***Common Law Bad Faith Claim.*** The parties agree that an outcome-determinative conflict exists between Colorado and Oklahoma law regarding Plaintiffs' common law bad faith claim (*see, e.g.,* ECF No. 46 at 11). Accordingly, the Court must determine, applying the governing choice-of-law framework, whether Colorado or Oklahoma law applies to Plaintiffs' common law bad faith claim. Applying this framework, the Court concludes that Colorado law applies to Plaintiffs' common law bad faith claim.

---

[2] Plaintiffs' third claim for relief is brought pursuant to C.R.S. §§ 10–3–1115 and 10–3–1116, and this line of choice-of-law authority supports the Court's conclusion that Colorado law applies to Plaintiff's third claim for statutory bad faith. *See, e.g., Duong*, 2022 WL 4386003, at *5. Indeed, Defendant in its brief—citing this line of authority—contends that the determination of which state's contract laws apply "controls" whether Colorado's or Oklahoma's regulatory statutes apply (ECF No. 43 at 8). The Court notes that claims for statutory bad faith under Colorado law are commonly treated as torts. *See Sun Well*, 2022 WL 18399478, at *3. Even if the Court construes Plaintiffs' third claim under §§ 10–3–1115 and 10–3–1116 as a tort for purpose of determining, under a choice-of-law analysis, whether Colorado or Oklahoma law applies, for the same reason discussed below in the Court's analysis of Plaintiff's common law bad faith claim, Colorado law would apply to the statutory bad faith claim.

Claims for bad faith breach of an insurance contract are tort claims, and courts analyze these claims separately from contract claims in insurance cases. *See Price v. Am. Fam. Mut. Ins. Co., S.I.*, No. 18-cv-3209-WJM-STV, 2020 WL 948710, at *8 (D. Colo. Feb. 27, 2020). The "most significant relationship test," set forth in section 145 of the Restatement (Second) of Conflict of Laws, applies to courts' choice of law analyses regarding common law bad faith claims. *Richardson v. Allstate Fire & Cas. Ins. Co.*, No. 21-cv-02043-REB-MDB, --- F. Supp. 3d ----, 2022 WL 16527945, at *5 (D. Colo. Oct. 28, 2022). Section 145 of the Restatement (Second) of Conflict of Laws provides:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
>
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
>
> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and
>
> (d) the place where the relationship, if any, between the parties is centered.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Richardson*, 2022 WL 16527945, at *6 (citation omitted). Once courts analyze the "relevant contacts" under section 145 of the Restatement, courts then turn to the Restatement's "section 6 factors" in concluding which body of law applies to the bad faith claim. *See, e.g., Price*, 2020 WL 948710, at *9–10. The section 6 factors include: (1) the needs of the "interstate and

international" systems; (2) the forum's relevant policies; (3) relevant policies of other interested states and their relative interests in determining the particular issue; (4) the "protection of justified expectations;" (5) basic policies "underlying" the field of law; (6) "certainty, predictability, and uniformity" of results; and (7) the "ease" in the determination and application of the applied law. *Id.* (citing Restatement § 6(2)). The Court proceeds in its analysis of the factors set forth in sections 145(2) and 6 below, concluding that they favor the application of Colorado law to Plaintiffs' common law bad faith claim.

*Section 145 Factors.* First, regarding the place where the injury occurred under section 145(2)(a), the Court finds *Price*'s analysis of this factor persuasive. "The injury in a bad faith claim is the destruction of the insured's peace of mind and trust in the insurer, and the economic hardship that might result from not receiving insurance payments." *Price*, 2020 WL 948710, at *9 (citing *Nunn v. Mid-Century Ins. Co.*, 244 P.3d 116, 119 (Colo. 2010)).[3] As Plaintiffs argue, Defendant communicated its denial of coverage, and this denial was received in Colorado (ECF No. 46 at 12–13; ECF No. 46-6; *see also* ECF No. 43 at 15). Thus, the injury—for purposes of the Court's choice-of-law analysis under section 145—occurred in Colorado. *See Price*, 2020 WL 948710, at *9; *Werden*, 2009 WL 1938795, at *3; *Boone v. MVM, Inc.*, 572 F.3d 809, 813 (10th Cir. 2009) (finding first section 145 factor favored application of Colorado law to wrongful discharge claim where plaintiff "was discharged at the moment he was informed over the telephone, in Colorado").

---

[3] Defendant argues *Price* is inapplicable, given that in this case Plaintiffs are corporate entities (ECF No. 47 at 11). However, other courts have applied this principle from *Price* in the context of corporate insurance disputes, and Defendant fails to persuade that doing so in this case is inappropriate. *See Sun Well*, 2022 WL 18399478, at *4.

Second, regarding the place where the conduct causing the injury occurred under section 145(2)(b), Oklahoma is the place where the conduct leading to Plaintiffs' allegations originated (*see* ECF No. 43 at 15). *See also Boone*, 572 F.3d at 813.

Third, regarding the "residency" factor under section 145(2)(c), Defendant's domicile is in Oklahoma (*see* ECF No. 43 at 16). Plaintiffs are domiciled in various states (*see, e.g.,* ECF No. 46 at 14). The parties appear to agree that this factor carries little weight in the Court's analysis (*see* ECF No. 46 at 14, ECF No. 47 at 10).

Fourth, regarding the place where the parties' relationship was centered under section 145(2)(d), the parties' relationship was formed via several contracts made, negotiated, and signed in different states (ECF No. 46 at 15). Moreover, as Plaintiffs observe, after litigation commenced, communications between the parties took place "in emails, calls, and faxes sent from lawyers in Colorado to adjusters in Oklahoma, and vice versa" (*id.*; *see also* ECF No. 43-4 at 2). Given the nature of Plaintiffs' suit, and the parties' locations while exchanging communications, this factor is neutral, favoring either Colorado or Oklahoma. *See, e.g., Price*, 2020 WL 948710, at *9.

In sum, the first section 145 factor favors Colorado, the second section 145 factor favors Oklahoma, and the remaining factors are essentially neutral. However, given that the injury occurred in Colorado, the first section 145 factor receives slightly more weight than the Court's finding that the second section 145 factor favors Oklahoma. *See Mathes v. Patterson-UTI Drilling Co. L.L.C.*, 44 F. Supp. 3d 691, 698 (S.D. Tex. 2014) ("[T]he state of incorporation or location of the defendant's principal place of business receives less weight than the place of the injury in the choice-of-law analysis." (citation omitted)); Restatement (Second) of Conflict of Laws § 145 cmt. e ("[P]ersons who cause injury in a state should not ordinarily escape liabilities imposed by the

local law of that state on account of the injury.") With this in mind, the Court proceeds to analyze the section 6 factors in determining whether Colorado or Oklahoma law applies to Plaintiffs' bad faith claim. *See, e.g., Price*, 2020 WL 948710, at *9–10.

*Section 6 Factors.* Neither party offered robust analysis of the section 6 factors as applied to Plaintiffs' common law bad faith claim. Nonetheless, analyzing what argumentation the parties have provided that may be construed as addressing the "broad and vague" section 6 factors, the Court concludes that they favor the application of Colorado law to Plaintiffs' claim. *Price*, 2020 WL 948710, at *10.

Here, the injury occurred in Colorado. In conducting its section 6 analysis, the Court agrees with Plaintiffs that this fact should be given greater weight in the Court's analysis than the place where the conduct causing the injury occurred (*see* ECF No. 46 at 13). Colorado has an interest in ensuring that insurers deal in good faith with their insureds, given the "special relationship" between them. *See Kisselman v. Am. Fam. Mut. Ins. Co.*, 292 P.3d 964, 970 (Colo. App. 2011). This interest—coupled with the fact that Plaintiffs were injured in Colorado—underscores the weight of Colorado's relevant policies and interests in enforcing its laws relative to Oklahoma's interest in the resolution of Plaintiffs' common law bad faith claim, even if conduct giving rise to the injury occurred in Oklahoma. *See* Restatement (Second) of Conflict of Laws § 6 cmt. e (1971) ("If the purposes sought to be achieved by a local statute or common law rule would be furthered by its application to out-of-state facts, this is a weighty reason why such application should be made"). Accordingly, after considering the section 6 factors alongside the section 145 factors, the Court concludes that Colorado law applies to Plaintiffs' common law bad faith claim. *See Richardson*, 2022 WL 16527945, at *7 (concluding that analysis of section 6 factors did not change

9

choice-of-law conclusion because "none points to a forum other than Colorado as having a more significant relationship" to bad faith claims).

### B. Reconsideration Motion

In its reconsideration motion, Defendant urges the Court to reconsider its January 3, 2023, Order and grant its Motion to Transfer (ECF No. 48 at 4). Having considered Defendant's reconsideration motion and the related briefing, the Court denies Defendant's reconsideration motion (*see* ECF Nos. 48–49).

Courts may in their discretion reconsider prior interlocutory orders. *See, e.g., Been v. O.K. Indus., Inc.*, 495 F.3d 1217, 1225 (10th Cir. 2007). This discretion is limited. *See Friedman v. Dollar Thrifty Auto. Grp., Inc.*, No. 12-cv-02432-WYD-KMT, 2015 WL 4036319, at *2 (D. Colo. July 1, 2015). In determining whether to grant a motion for reconsideration, courts consider whether "new evidence or legal authority has emerged or whether the prior ruling was clearly in error." *Gould v. Union Pac. R.R. Co.*, No. 19-cv-02326-PAB-NRN, 2022 WL 4285710, at *1 (D. Colo. Sept. 15, 2022); *see also Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000) ("Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law." (citation omitted)). Reconsideration motions are inappropriate vehicles to advance new arguments or supporting facts available at the time of the original motion, and a reconsideration motion "should not be used to revisit issues already addressed or advance arguments that could have been raised earlier." *Id.* (quotations omitted).

Defendant makes several arguments in its reconsideration motion:

- Keeping this case in Colorado will have "far-reaching and unintended consequences;"

10

- Keeping this case "ignores what the underlying litigation entails;" and

- Transfer is warranted under the *Chrysler* factors

(ECF No. 48 at 5–7). These arguments fail to demonstrate that reconsideration of the Court's prior Order is warranted. For instance, in arguing that keeping this case in Colorado will have "far-reaching" consequences, Defendant simply counters arguments that Plaintiffs made in their Response to Defendant's original Motion to Transfer (*see* ECF No. 48 at 5; *see also* ECF No. 30). *Cf. Servants of Paraclete*, 204 F.3d at 1012. Defendant's remaining contentions do not identify any intervening legal developments, new evidence, or clear errors in the Court's prior Order that warrant reconsideration to prevent manifest injustice. *See, e.g., Gould*, 2022 WL 4285710, at *1.

Defendant's argument regarding the underlying litigation fares no better (ECF No. 48 at 6). Defendant contends that the relevant evidence in this case exists in Oklahoma, that the receipt of some relevant communications in Colorado is "tangential," and that only three of fourteen potential depositions identified by Defendant involve Colorado witnesses, whereas many other deponents would be in Oklahoma (*see id.* at 7). But these contentions likewise fail to identify any new evidence or other valid basis for reconsideration of the Court's prior Order, or persuade that reconsideration is warranted. *See Gould*, 2022 WL 4285710, at *1. Moreover, Defendant argued that "no pertinent witnesses or evidence exist in Colorado" in its original motion (ECF No. 14 at 7; *see also* ECF No. 49 at 5). *See also Gould*, 2022 WL 4285710, at *1 ("A motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier." (citation omitted)).

Finally, Defendant's legal arguments regarding the "*Chrysler* factors" are essentially a challenge to Plaintiffs' choice of forum (*see* ECF No. 48 at 7–9).[4] Defendant also argues that the Western District of Oklahoma's docket is less congested, further counseling in favor of transfer, as well as that the Western District of Oklahoma is better suited to interpret and apply Oklahoma state law (*id.* at 9). These arguments do not identify any intervening case law, new evidence, or clear error in the Court's prior Order that warrant reconsideration to prevent manifest injustice. Moreover, Defendant discussed and urged transfer under the *Chrysler* factors in its original motion—based largely on the same argument advanced in its reconsideration motion regarding the tenuousness of Colorado's connection to this lawsuit—and argued that the Western District of Oklahoma's docket favored transfer (*see* ECF No. 14 at 6, 9; *see also* ECF No. 48 at 7–8). Given that Defendant advanced these arguments in its original motion, and raises them again in its reconsideration motion, this reinforces the Court's determination that reconsideration is inappropriate (*see* ECF No. 49 at 3). *See also Gould*, 2022 WL 4285710, at *1 ("A motion to reconsider should not be used to revisit issues already addressed or advance arguments that could have been raised earlier." (citation omitted)). Having now concluded that Colorado law applies, this is more reason to keep this case in the District of Colorado.

In sum, the standards that warrant reconsideration are clear. *See, e.g., Gould*, 2022 WL 4285710, at *1. Defendant has failed to satisfy them.

---

[4] As discussed in the Court's section 6 analysis, certain facts giving rise to this lawsuit did occur outside of Colorado, and Plaintiffs are not Colorado residents. Nonetheless, even where plaintiffs are not residents of a forum, courts do accord deference to their choice of forum. *See Emps. Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1168 (10th Cir. 2010). And where, as here, Plaintiffs were denied coverage in Colorado, this cuts in favor of finding that the District of Colorado is the appropriate venue for this action, even if the Court assumes that the Western District of Oklahoma may also be a legitimate venue. *See id.*; *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 358 (2d Cir. 2005). Accordingly, Defendant fails to persuade that Plaintiffs' choice of forum is one the Court should second-guess.

## IV. CONCLUSION

Consistent with the above analysis, the Court disagrees with Defendant's Amended Choice of Law Brief (ECF No. 43). Accordingly, the Court applies Colorado law to all three of Plaintiffs' claims for relief. The Court DENIES Defendant's Motion for the Court to Reconsider Order Denyig [sic] Motion to Transfer Case (ECF No. 48).

DATED this day of June 1, 2023.

BY THE COURT:

_____
Charlotte N. Sweeney
United States District Judge